IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| WILLIAM TYRONE PAYTON | * | | |
|---|---|---|---|
| Petitioner | * | | |
| | * | Civil No.: | PJM 10-1558 |
| v. | * | Crim. No.: | PJM 06-0341 |
| UNITED STATES OF AMERICA | * | | |
| Respondent | * | | |

## MEMORANDUM OPINION

William Tyrone Payton, *pro se*, has filed a Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct a Sentence by a Person in Federal Custody [Paper No. 72]. Having considered Payton's Motion and the Government's Opposition thereto, the Court **DENIES** the Motion.

**I.**

On March 28, 2007, a federal grand jury returned a three-count superseding indictment against Payton, charging him with: (1) conspiracy to distribute and possess with intent to distribute 500 or more grams of cocaine, in violation of 21 U.S.C. § 846; (2) distribution of 500 or more grams of powder cocaine, in violation of 21 U.S.C. § 841; and (3) using a communications device to facilitate the aforementioned conspiracy and distribution of powder cocaine, in violation of 21 U.S.C. § 843.

A jury trial commenced on April 17, 2007. During trial, two co-conspirators testified to numerous telephone conversations and personal dealings with Payton as a supplier of cocaine. A third co-conspirator testified to having brought money to Payton to pay him for a supply of cocaine. In addition, the Government introduced into evidence—and played for the jury—audio recordings of telephone conversations between Payton and his co-conspirators. As explained by

witness testimony, those telephone conversations contained discussion of narcotics transactions between Payton and his co-conspirators. The jury also learned that Payton had previously been convicted of other cocaine-related offenses.

As part of his strategy, Payton's counsel conceded at trial that Payton's voice had been captured on recorded telephone conversations related to drugs, but that Payton had trafficked only in marijuana, not in cocaine. In other words, by conceding Payton's guilt on an uncharged offense (possession with intent to distribute marijuana), defense counsel sought to avoid conviction on the charged cocaine offenses.

The jury found Payton guilty on all three cocaine-related counts, and the Court subsequently sentenced him to 292 months in prison. The Fourth Circuit affirmed the conviction, and the Supreme Court denied Payton's petition for a writ of certiorari. He thereafter filed the instant Motion to Vacate.

## II.

In his Motion, Payton argues that his counsel's performance was deficient in violation of the Sixth Amendment to the United States Constitution for three separate reasons. First, he argues that counsel's concession that he had trafficked in marijuana was erroneous because it led to the introduction into evidence, under Federal Rule of Evidence 404(b), of Payton's prior cocaine convictions. Second, Payton argues that counsel erred in conceding that Payton's voice had been captured on the Government's telephone recordings. Third, Payton argues that counsel erred in failing to conduct, prior to trial, a "voice print investigation" that might have shown that Payton's voice was not the voice captured on the telephone calls intercepted by the Government.

In response, the Government argues that defense counsel's concessions and the decision not to conduct a "voice print investigation" were not only *not* erroneous, they were components

of sound trial strategy designed to negate the Government's allegations that Payton had trafficked in cocaine. The Government further argues that, even if defense counsel's acts or omissions were erroneous, the outcome of the trial would not have been different had counsel proceeded otherwise.

### III.

A claim of ineffective assistance of counsel in violation of a habeas petitioner's Sixth Amendment rights is examined under the familiar two-prong analysis set forth in *Strickland v. Washington*, 466 U.S. 668 (1984).

Under *Strickland*'s first prong, a petitioner must "show that counsel made errors so serious that counsel was not functioning as 'counsel' guaranteed . . . by the Sixth Amendment." *Strickland*, 466 U.S. at 687. A petitioner may make such a showing by proving that his counsel "fell below an objective standard of reasonableness" "under prevailing professional norms." *Id.* at 687-88; *see also United States v. Mikalajunas*, 186 F.3d 490, 493 (4th Cir. 1999). In other words, the performance of petitioner's counsel must have been outside "the range of competence demanded of attorneys in criminal cases." *Hill v. Lockhart*, 474 U.S. 52, 56 (1985) (citations omitted). Under this prong, the law presumes that a defense attorney was competent, and "[j]udicial scrutiny of counsel's performance must be highly deferential [because i]t is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence . . . ." *Strickland*, 466 U.S. at 689.

Thus, under the first prong of *Strickland*, the test for evaluating a concession or stipulation by defense counsel is whether, under the totality of the circumstances, the concession might be considered reasonable strategy. If, in light of all the evidence, a concession or stipulation was objectively reasonable, counsel's performance was not deficient. *See, e.g.*, *Young*

*v. Catoe*, 205 F.3d 750, 759 (4th Cir. 2000) (upholding the validity of tactical concessions on the grounds that, "on occasion, it is best to risk losing the battle in the hope of winning the war"); *United States v. Berkovich*, 168 F.3d 64, 67-68 (2d Cir. 1999) (holding counsel's decision to enter into a global stipulation part of a "reasonable trial strategy"); *Brown v. Artuz*, 124 F.3d 73, 77 (2d Cir. 1997) (identifying "what evidence should be introduced, what stipulations should be made, what objections should be raised, and what pre-trial motions should be filed" as matters that "primarily involve trial strategy and tactics") (internal citations and quotation marks omitted); *Bell v. Evatt*, 72 F.3d 421, 429 (4th Cir. 1995) (holding that "tactical retreats may be reasonable and necessary within the context of the entire trial, particularly when there is overwhelming evidence of the defendant's guilt"); *United States v. Leifried*, 732 F.2d 388, 390 (4th Cir. 1984) (holding that defense counsel's tactical admission of the defendant's guilt of individual drug trafficking offenses to avoid conviction for a continuing criminal enterprise was reasonable trial strategy where the evidence of guilt was overwhelming).

But even if a habeas petitioner succeeds in showing that his counsel's performance "fell below an objective standard of reasonableness" "under prevailing professional norms," *Strickland*, 466 U.S. at 687-88, he must still show, pursuant to the second prong of the *Strickland* analysis, that his counsel's "deficient performance prejudiced the defense." *Id.* at 687. In other words, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

**IV.**

Each of Payton's three arguments that his counsel was ineffective fails to satisfy the *Strickland* standard. He has not demonstrated that counsel's performance "fell below an objective standard of reasonableness" "under prevailing professional norms." *Strickland*, 466

U.S. at 687-88. And even assuming *arguendo* that counsel's performance was objectively unreasonable, Payton has not shown that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

**A.**

Payton has failed to show that the decisions by counsel he challenges—the marijuana concession, the voice recording concession, and the decision not to conduct a "voice print investigation"—were anything other than components of a "reasonable trial strategy." *Berkovich*, 168 F.3d at 67-68. Indeed, the first of counsel's concessions—that Payton had merely participated in an uncharged marijuana conspiracy—was, if believed by the jury, a complete defense to the charges at issue in the trial. The second concession—that Payton's voice could be heard on the telephone conversations intercepted by the Government—was, given the numerous Government witnesses willing to testify that the voice on the recordings was Payton's, merely a tactical decision by counsel not to hamper the proceedings with frivolous and distracting argumentation. *See United States v. Terry*, 366 F.3d 312, 318 (4th Cir. 2004) ("A fundamental reality of trial practice is that often, a weak witness or argument is not merely useless but, worse than that, may detract from the strength of the case by distracting from stronger arguments and focusing attention on weaknesses.") (internal citations and quotation marks omitted). For the same reasons, counsel's decision not to conduct a pre-trial "voice print investigation" of the Government's telephone recordings was, given the overwhelming evidence connecting Payton to the recordings, a reasonable effort to conserve time and expense in preparing for trial by not engaging in a pointless distraction from other aspects of Payton's case. *See id.*

In particular, with respect to the marijuana concession, Payton misconstrues the basis for the admission into evidence of his prior cocaine convictions. Payton seems to believe that

counsel's concession as to the marijuana trafficking led to the introduction of the cocaine convictions. That simply is not the case. Rather, the evidence of the cocaine convictions came in because Payton had *denied any involvement in cocaine dealing*. In other words, Payton's prior convictions for cocaine-related offenses served as evidence of his continuing intent to deal in cocaine,[1] and were thus admissible irrespective of counsel's concession regarding marijuana trafficking.

**B.**

All this said, assuming *arguendo* that counsel's performance was objectively unreasonable, Payton cannot show that, absent counsel's assumed errors, the outcome of the proceedings would have been different. As noted *supra*, two co-conspirators testified to numerous telephone conversations and personal dealings with Payton as a supplier of cocaine. A third co-conspirator testified to having brought money to Payton to pay him for a supply of cocaine. Witnesses also testified that the voice on the recorded telephone conversations intercepted by the Government was Payton's. In light of this welter of evidence, Payton cannot show "that there is a reasonable probability that, but for counsel's [assumed] unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

**V.**

Rule 11(a) of the Rules Governing § 2255 Cases provides that the district court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." A certificate of appealability will not issue absent "a substantial showing of the denial of a

---

[1] Under Federal Rule of Evidence 404(b), evidence of other crimes may be admissible to show "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident . . . ." Fed. R. Evid. 404(b). A review of the trial transcript shows that the Court permitted admission of Payton's prior cocaine convictions only to show continuing intent to deal in cocaine. *See* Trial Tr. 397-98, Apr. 24, 2007 ("THE COURT: . . . [A]s I understand your defense now, he was around cocaine but he wasn't involved in it. Well, if he's around cocaine and he's dealt with cocaine before, why isn't the inference possible that his intent was to deal with the cocaine here?").

constitutional right." 28 U.S.C. § 2253(c)(2). A prisoner satisfies this standard by demonstrating that reasonable jurists would find that any assessment of the constitutional claims by the district court is debatable or wrong, and that any dispositive procedural ruling by the district court is likewise debatable. *See Miller-El v. Cockrell*, 537 U.S. 322, 336-38 (2003); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *Rose v. Lee*, 252 F.3d 676, 683-84 (4th Cir. 2001). The Court has considered the record and finds that Payton has not made the requisite showing here. Accordingly, the Court denies a certificate of appealability.

## VI.

For the foregoing reasons, Payton's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct a Sentence by a Person in Federal Custody [Paper No. 72] is **DENIED**. A certificate of appealability is likewise **DENIED**.

A separate Order will **ISSUE**.

/s/
**PETER J. MESSITTE**
**UNITED STATES DISTRICT JUDGE**

**November 30, 2010**